**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

MEAGAN DURAND and MARTIN              :
RICHARDS, on behalf of themselves      :     CASE NO.  3:24CV-718-DJH
and others similarly situated,         :
                                       :
     Plaintiffs,                      :
                                       :
v.                                     :
                                       :
GIVAUDAN FLAVORS CORPORATION.,         :
a Delaware corporation,                :
                                       :
     Defendant.                       :
                                       :
_____/

**CLASS ACTION COMPLAINT**
**DECLARATORY AND PERMANENT INJUNCTIVE RELIEF REQUESTED**
**DEMAND FOR A JURY TRIAL**

     Plaintiffs, MEAGAN DURAND and MARTIN RICHARDS ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant, GIVAUDAN FLAVORS CORPORATION ("Defendant" or "Givaudan").

<u>**NATURE OF ACTION**</u>

     1.    Plaintiffs bring this class action against Defendant Givaudan Flavors Corporation for damages caused from the explosion of Defendant's manufacturing facility located at 1901 Payne Street, Louisville, KY on November 12, 2024.  The explosion sent off literal shockwaves throughout Louisville, much like a large bomb, resulting in at least two deaths, dozens of personal injuries, and millions in property damage suffered by both businesses and private individuals living within the vicinity of the factory.  The explosion resulted in an immediate shelter-in-place order for a 1-mile radius from the area, and an evacuation order for multiple blocks surrounding the

facility that continues to this day.  Indeed, many, if not the majority of individuals located within the evacuation area will never be able to return or have already been forced to permanently leave.

2.     The explosion also caused inevitable criminal activity.  Following the very public evacuation order and robust media coverage, it was public knowledge that the residences within multiple blocks of the explosion were vacant – and that the former residents had no reasonable manner of removing their possessions and valuables.  And, because of the damage caused by the explosion, the residences suffered severe damage such that many doors, windows, and entryways broke allowing easy access inside.  Predictably, many of the properties within the evacuation zone were burglarized, repeatedly.  Even after receiving repeated notice of the critical security issue, Givaudan did not provide or effectuate reasonable and necessary security measures to ensure that further burglaries would be avoided.  Nor did Givaudan offer compensation for damaged (or confiscated) property whether caused by the explosion itself or through foreseeable criminal activity afterwards.  And so, criminals came back again, and again.

3.     Residents both within and outside the evacuation zone have been left scrambling to find adequate housing in the midst of a tough rental and property market in the middle of the holiday season.  While Givaudan has paid lip service to offering some help, class members have had to bear the brunt of the financial impact of the explosion by themselves.  Givaudan has not provided compensation for the big ticket items – damage to property caused by the explosion and reasonable, long term housing.

4.     Plaintiffs bring this class action for Givaudan's negligence, gross negligence and nuisance.

## PARTIES

5.     Plaintiff Meagan Durand is a citizen and resident of Louisville, Kentucky.

2

6.      Plaintiff Martin Richards is a citizen and resident of Louisville, Kentucky.

7.      Plaintiffs each resided at 102 Weist Place, Louisville, KY 40206 at the time of the explosion at the Factory.

8.      After the explosion, Plaintiffs' residence was deemed to be within the evacuation zone, which is in effect to this day.  Their residence was also within the shelter-in-place zone. Plaintiffs were not, and are not, allowed to reside in their "residence."  Indeed, Plaintiffs have been required to vacate the premises permanently due to the evacuation order and extensive damage to the building, and they have not yet been able to find suitable permanent housing.

9.      The explosion caused significant damage to Plaintiffs' personal property and loss of habitation and enjoyment of their home.  And, after the explosion, as discussed above, Plaintiffs' residence was burglarized multiple times as a direct cause of the explosion, each time adding further additional personal property damage.  For instance, a police report from November 23, 2024 noted: "Between the listed date and time, the victim's unattached garage was broken into. Entry was from the Payne St Explosion which caused a hole in the side of the garage."  The back door to Plaintiffs' residence was also left hanging off the frame, effectively allowing burglars direct access to the house.  Plaintiffs, along with many other class members, provided notice to Defendant of the burglaries, but did not receive reasonable security to ensure that further burglaries would be prevented.

10.     Defendant has not compensated Plaintiffs for their property damage.

11.     Defendant Givaudan Flavors Corporation is a for profit corporation organized under the laws of Delaware with its principal place of business located at 1199 Edison Dr., Cincinnati, Ohio 45216. Defendant owned, controlled, operated and maintained (and continues to do so) its factory located at 1901 Payne Street, Louisville, KY 40206 at issue in this lawsuit.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

13.     This Court has personal jurisdiction over Defendant because it conducts substantial business in Kentucky, and the facility at issue is located in Kentucky.  A substantial portion of the events giving rise to the claims alleged here occurred in this state.

14.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Defendant is subject to personal jurisdiction in this District.  Plaintiffs reside, and suffered injuries as alleged herein, in this District

## FACTUAL ALLEGATIONS

15.     Defendant Givaudan owns and maintains a factory located at 1901 Payne Street, Louisville, KY 40206 (the "Factory").  The factory was primarily used to manufacture caramel color additives for food and beverage products.

16.     Defendant's Factory is located in a mixed-zoned neighborhood, sandwiched on all sides by largely private residences consisting of small apartment buildings and single-family homes, as well as some of Louisville's most popular retail shops and restaurants on Frankfort Avenue.  It is extremely foreseeable that even a small explosion, fire, or other nuisance or dangerous event at the Factory would have acute injuries to residents' and businesses livelihoods and wellbeing located in proximity to the Factory.  A map below shows an aerial view of

Defendant's Factory (signified by the red pin), surrounded by mostly private residences and businesses.



17.    On November 12, 2024, a large section of the factory exploded, causing massive damage to properties within one to two miles of the blast, resulting in at least two deaths, and various other personal injuries.  It also resulted in a shelter in place order, and an evacuation zone that is still in place.

18.    Officials from the Louisville Field Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives announced after surveying the damage that a failure of a cooking vessel on the south side of the facility let to the catastrophic event.[1]  "There's some indication that the vessel did not vent properly, and that caused an overheating and explosion – over pressurization, if you will."[2]  The agent in charge also stated that while the investigation is ongoing, the data analysis "definitely" allows authorities to conclude that the part known as "cooking vessel No. 6" failed and caused the explosion.[3]  He added that "there were signs of possible maintenance issues with that equipment."[4]

19.    One of Defendant's employees told local news media that she "warned co-workers about the cooker days before the blast, saying it had been overheating for several days."[5]  "According to the workers, the employee explicitly told them not to walk past Cooker 6, as it had been overheating for several days."[6]  Despite these warnings, the cooker that exploded continued to operate until it exploded on November 12, 2024, killing employees and devastating the surrounding community in the process.

20.    Another local media outlet reported that one of Defendant's employees raised concerns with Defendant's management concerning leaking sulfur dioxide, prior to the incident, and reported the issue to federal workplace safety regulators.[7]  Reportedly, Defendant was in the

---

[1] https://www.courier-journal.com/story/news/local/2024/11/18/louisville-givaudan-plant-explosion-officials-rule-blast-accidental/76404362007/

[2] https://www.wdrb.com/in-depth/cooking-vessel-failure-cited-as-cause-of-louisville-plant-explosion/article_ec779418-a5c6-11ef-9dfa-fbf0176bb578.html

[3] https://www.wdrb.com/in-depth/cooking-vessel-failure-cited-as-cause-of-louisville-plant-explosion/article_ec779418-a5c6-11ef-9dfa-fbf0176bb578.html

[4] https://www.wdrb.com/in-depth/cooking-vessel-failure-cited-as-cause-of-louisville-plant-explosion/article_ec779418-a5c6-11ef-9dfa-fbf0176bb578.html

[5] https://www.wdrb.com/in-depth/cooking-vessel-failure-cited-as-cause-of-louisville-plant-explosion/article_ec779418-a5c6-11ef-9dfa-fbf0176bb578.html

[6] https://www.wdrb.com/news/fatal-explosion-at-givaudan-plant-sparks-investigation-into-overlooked-equipment-risks/article_6a93413c-a3c2-11ef-8eff-57f1b49966c1.html

[7] https://www.wdrb.com/news/givaudan-employee-describes-lots-of-leaks-at-louisville-plant-that-exploded/article_0ef12ec2-a1ef-11ef-8f37-0f7e625076cf.html

practice of not fixing known safety issues.[8]  The employee "provided pictures and videos as evidence, showing dangerous conditions inside the plant: steam or smoke filling a room, water pouring from a wall near an electrical outlet, and an oil-like substance leaking from equipment."[9]

21.    Unfortunately, this is not the first time that this specific facility has exploded from a vessel failure.  In 2003, an employee died after a catastrophic vessel failure according to the U.S. Chemical Safety and Hazard Investigation Board ("CSB").[10]  As in the most recent explosion, the vessel appears to have failed due to becoming overpressurized.  During the 2003, explosion, 26 people were evacuated and were ordered to shelter in place.  At the time, CSB determined that there were no "effective programs in place to determine if equipment and processes met basic process and plant engineering requirements.  The tank that failed had no relief device for overpressure protection, nor did it have basic process control or alarm instrumentation to prevent process upsets."[11]  There were reportedly no "adequate operating procedures or adequate training programs to ensure that operators were aware of the risks of allowing the spray dryer feed tanks to overheat and knew how to respond appropriately."[12]

22.    Defendant had actual, or at least constructive notice, of the hazard that lead to the explosion prior to the event and failed to address it.  At a minimum, it was reasonably foreseeable that the explosion would occur given Defendant's history, and its failure to adequately monitor and oversee its equipment, as well as its failure to properly train or oversee its employees.

---

[8] https://www.wdrb.com/news/givaudan-employee-describes-lots-of-leaks-at-louisville-plant-that-exploded/article_0ef12ec2-a1ef-11ef-8f37-0f7e625076cf.html
[9] https://www.wdrb.com/news/fatal-explosion-at-givaudan-plant-sparks-investigation-into-overlooked-equipment-risks/article_6a93413c-a3c2-11ef-8eff-57f1b49966c1.html
[10] https://www.whas11.com/article/news/local/louisville-plant-explosion-not-first-time-kentucky-payne-street/417-0563389a-810f-42ea-a57f-d6ceee6d58a5
[11] https://www.whas11.com/article/news/local/louisville-plant-explosion-not-first-time-kentucky-payne-street/417-0563389a-810f-42ea-a57f-d6ceee6d58a5
[12] *Id*.

23.    Defendant intentionally, recklessly, willfully, maliciously, grossly, and negligently failed to properly maintain, occupy and/or operate the Factory, and caused the injuries to Plaintiffs and the class members.  Further, Defendant failed to mitigate damages and increased harm to Plaintiffs and class members by failing to provide adequate and necessary security measures that resulted in further damage to property.

## CLASS ACTION ALLEGATIONS

24.    As authorized by Fed. R. Civ. P. 23(b)(2) or (b)(3), Plaintiffs bring this action seeking injunctive relief and money damages on behalf of themselves and on behalf of all other persons similarly situated, defined as follows:

**Shelter-In-Place Class:**  All owner-occupants and renters of residential property within a 1-mile radius of the property boundary of Defendant's Factory as of November 12, 2024.

**Evacuation Class:**  All owner-occupants and renters of residential property within the November 12, 2024 Factory explosion evacuation zone as of November 12, 2024.

25.    The Shelter-In-Place Class and Evacuation Class shall be referred to as the "Classes."  Excluded from the Class are Defendant and their affiliates, predecessors, successors, officers, directors, agents, servants, or employees, and the immediate family members of such persons.  Plaintiffs reserve the right to modify the class definitions and/or propose one or more additional

26.    **Numerosity.** There are at least hundreds, if not thousands, of members of the Classes.  Individual joinder of these persons is impracticable.

27.    **Commonality.** Numerous common questions of law and fact predominate over any individual questions affecting Class members, including, but not limited to the following:

a.   Whether and how Defendant intentionally, recklessly, willfully, wantonly, maliciously, grossly and/or negligently failed to construct, maintain, occupy and/or operate the Factory;

b.   Whether Defendant owed any duties to Plaintiffs;

c.   Which duties Defendant owned to Plaintiffs;

d.   Whether it was reasonably foreseeable that Defendant's failure to properly construct, maintain, occupy and/or operate the Factory would result in damage to Plaintiffs and members of the Classes;

e.   Whether it was reasonably foreseeable that Defendant's failure to provide reasonable security following the Factory explosion would result in damage to Plaintiffs and members of the Classes;

f.   Whether the degree of harm suffered by Plaintiffs and the Classes constitutes a substantial annoyance or interference;

g.   The proper measure of damages incurred by Plaintiffs and the Classes;

h.   Whether Plaintiffs and the Classes have stated a claim for relief.

28.   **Typicality.** Plaintiffs have the same interests in this matter as all the other members of the Class, and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, rely upon the same legal theories and seek the same type of relief.  The claims of Plaintiffs and the other Class members have a common origin and share a common basis. The claims originate from the same explosion, caused by the failure of the Defendant to properly construct, maintain, occupy and/or operate the Factory.  All Class members have suffered injury

in fact resulting in the loss of property by reason of Defendant's acts and/or omissions in causing the explosion.

29.    **Adequacy of Representation.** Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Classes, they will fairly and adequately protect the interests of the Classes, and they are represented by counsel skilled and experienced in class actions.

30.    **Superiority.** Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

31.    A class action is the superior method for the fair and efficient adjudication of this controversy. The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action property damages are relatively small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

32.    Defendant acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis.

## CAUSES OF ACTION I AND II

## NEGLIGENCE AND GROSS NEGLIGENCE

33.     Plaintiffs repeat their prior allegations of this Complaint as if fully rewritten herein and incorporate them by reference.

34.     Plaintiffs assert these claims on their own behalf and on behalf of the Classes.

35.     Defendant negligently and improperly constructed, maintained, occupied, operated the Factory and negligently and improperly trained and oversaw its agents and employees at the Factory.

36.     Defendant was on notice that there was an imminent risk of harm that could have led to the explosion and failed to address it.

37.     Defendant knew or should have known that failure to reasonably oversee safety issues at the Factory and train and monitor its employees could and certainly would lead to extreme damage to Plaintiffs and the members of the Classes.

38.     As a direct, foreseeable, substantial, and proximate result of Defendant's negligence and gross negligence, Plaintiffs and the Classes suffered damage and have lost the use and enjoyment of their property and residence.

39.     The explosion and subsequent damages suffered by Plaintiffs and the Classes were reasonably foreseeable by the Defendant, who were or should have been aware of the risks associated with their conduct.

40.     By failing to properly construct, maintain, occupy and/or operate the Factory, and then failing to provide adequate security, Defendant failed to exercise their duty of ordinary care and diligence so that the explosion and subsequent burglaries would not damage Plaintiffs and Class Members and their property.  Defendant did so knowingly.

41.    By failing to properly construct, maintain, occupy and/or operate the Factory, and then failing to provide adequate security, Defendant caused the harm to Plaintiffs and the Classes. The harm was a direct, foreseeable, substantial, and proximate result of Defendant's failure to exercise ordinary care.

42.    The conduct of Defendant in knowingly allowing conditions to exist which caused the explosion and then Defendant's knowing failure to institute reasonable security constitutes gross negligence as it demonstrates a substantial lack of concern for whether an injury resulted to Plaintiffs and members of the Classes.

43.    Defendant's gross negligence was malicious and made with a wanton or reckless disregard for the lives, safety or property of Plaintiffs and members of the Classes.

## CAUSES OF ACTION III

### NUISANCE

44.    Plaintiffs repeat their prior allegations of this Complaint as if fully rewritten herein and incorporate them by reference.

45.    Plaintiffs assert these claims on their own behalf and on behalf of the Classes.

46.    Defendant negligently and improperly constructed, maintained, occupied, operated the Factory and negligently and improperly trained and oversaw its agents and employees at the Factory.

47.    Defendant was on notice that there was an imminent risk of harm that could have led to the explosion and failed to address it.

48.    Defendant knew or should have known that failure to reasonably oversee safety issues at the Factory and train and monitor its employees could and certainly would lead to extreme damage to Plaintiffs and the members of the Classes.

49.    As a result of Defendant's failures, it caused harm including without limitation the substantial and unreasonable interference with Plaintiffs' ability to use and enjoy their home.

50.    The resulting massive explosion caused energy, sound, and shock waves to cause physical damage to Plaintiffs' and members of the Classes' personal property, forcing some Class members out of their homes entirely, and forcing others to be involuntarily confined in their residences.  For instance, a November 23, 2024 police report for Plaintiffs' property notes that the explosion "caused a hole in the side of the garage."  The explosion also caused massive amounts of debris and shrapnel to be strewn across lawns and throughout the neighborhoods surrounding the Factory.

51.    The importance of Defendant's use of the Factory was minimal, and, as in fact used by Defendant, had no value.  The countervailing risks borne by Defendant's use and operation of the Factory were not outweighed by the benefit of Defendant's Factory.

52.    Defendant's use of the Factory did not contribute to the growth or prosperity of the community.

53.    As a direct, foreseeable, substantial, and proximate result of Defendant's negligence and gross negligence, Plaintiffs and the Classes suffered have lost the use and enjoyment of their property and residence and have resulted in a diminution in market value and/or fair rental value of their property.

## CAUSES OF ACTION IV

## TRESPASS

54.    Plaintiffs repeat their prior allegations of this Complaint as if fully rewritten herein and incorporate them by reference.

55.    Plaintiffs assert these claims on their own behalf and on behalf of the Classes.

56.    Defendant negligently and improperly constructed, maintained, occupied, operated the Factory and negligently and improperly trained and oversaw its agents and employees at the Factory.

57.    Defendant was on notice that there was an imminent risk of harm that could have led to the explosion and failed to address it.

58.    Defendant knowingly allowed the explosion to occur, as it was reasonably foreseeable to occur after Defendant received notice.  The resulting massive explosion caused energy, sound, and shock waves to cause physical damage to Plaintiffs' and members of the Classes' personal property, forcing some Class members out of their homes entirely, and forcing others to be involuntarily confined in their residences.  For instance, a November 23, 2024 police report for Plaintiffs' property notes that the explosion "caused a hole in the side of the garage." The explosion also caused massive amounts of debris and shrapnel to be strewn across lawns and throughout the neighborhoods surrounding the Factory.

59.    Defendant knew or should have known that failure to reasonably oversee safety issues at the Factory and train and monitor its employees could and certainly would lead to extreme damage to Plaintiffs and the members of the Classes.

60.    As a direct, foreseeable, substantial, and proximate result of Defendant's negligence and gross negligence, Plaintiffs and the Classes suffered damage and have lost the use and enjoyment of their property and residence.

61.    The explosion and subsequent damages suffered by Plaintiffs and the Classes were reasonably foreseeable by the Defendant, who were or should have been aware of the risks associated with their conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

A.    Certification of the proposed Classes;

B.    Appointment of Plaintiffs as representative of the Classes;

C.    Appointment of undersigned counsel as counsel for the Classes;

D.    Judgment in favor of Plaintiffs and the members of the Classes and against Defendant;

E.    Award Plaintiffs and the members of Classes all relief available under the law;

F.    An award of attorney fees, expenses, and costs; and

G.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

## <u>JURY DEMAND</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs request a jury trial on all issues so triable.

Dated: December 10, 2024                Respectfully  submitted,

SMITH KRIVOSHEY, PC

By:*/s/ Aleksandr "Sasha" Litvinov*
Aleksandr "Sasha" Litvinov (KY Bar No. 95598)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-7404
Facsimile: (888) 410-0415
E-Mail: sasha@skclassactions.com

Yeremey O. Krivoshey (SBN 295032) (*pro hac vice to be submitted*)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415

E-Mail: yeremey@skclassactions.com

Nicholas A. Coulson (*pro hac vice to be submitted*)
**COULSON P.C.**
300 River Place Drive
Suite 1700
Detroit, MI 48207
(313) 644-2685
nick@coulsonpc.com


*Attorneys for Plaintiffs*
*and the Proposed Classes*